UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN TIFFANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>O'REILLY AUTOMOTIVE STORES,<br>INC. and DOES 1-100,<br>inclusive,<br><br>　　　　Defendants. | No. CIV. S-13-0926 LKK/KJN<br><br><br><br>**ORDER** |

Plaintiff Kristen Tiffany has sued her former employer, defendant Ozark Automotive Distributors, Inc. d/b/a O'Reilly Auto Parts, alleging disability discrimination and related causes of action. Plaintiff initially filed suit in San Joaquin County Superior Court; her complaint alleged only state law claims. Defendant timely removed to this court, invoking diversity jurisdiction. Plaintiff now moves to remand.

The motion came on for hearing on September 9, 2013. Having considered the matter, the court will deny plaintiff's motion for the reasons set forth below.

////

1

## I. BACKGROUND

The following allegations are taken from plaintiff's state court complaint. (ECF No. 2.) Plaintiff was previously employed as a material handler at an O'Reilly store in Stockton, California. In September 2011,[1] plaintiff learned that she was pregnant. As she had earlier suffered a miscarriage, her physician restricted the amount that she could lift while at work. In October 2011, plaintiff informed defendant of her pregnancy and the lifting restriction, and requested a reasonable accommodation that would permit her to continue working. Defendant instead placed her on an involuntary leave of absence, pursuant to the Family & Medical Leave Act, beginning on October 5, 2011. When plaintiff complained about being placed on a leave of absence, rather than on "light-duty" (which does not require heavy lifting and would have accommodated plaintiff's lifting restrictions), defendant indicated that light-duty was reserved for employees who were injured on the job. Plaintiff gave birth on May 5, 2012; five days later, defendant terminated her from

---

[1] One or more of the dates in the state court complaint is erroneous. The complaint alleges that plaintiff discovered she was pregnant in September 2012, was placed on an involuntary leave of absence in October 2012, and gave birth in May 2012 — *five months earlier*. These errors are repeated in plaintiff's First Amended Complaint. (ECF No. 14.) The court infers that plaintiff did not give birth in May 2013, as the state court complaint was filed on March 19, 2013 and the action was removed to this court on May 10, 2013. However, the Declaration of Mirna J. Scheffy in Support of Defendant's Opposition to the Motion to Remand ("Scheffy Decl.", ECF No. 17) provides that plaintiff was placed on a leave of absence due to her pregnancy-related condition on October 5, 2011 and terminated on May 5, 2012. Accordingly, the court will use these dates rather than the dates in the complaint. Plaintiff is cautioned to plead more carefully in the future.

2

employment. Plaintiff timely filed a complaint with the California Department of Fair Employment and Housing, which issued her a right-to-sue notice.

Plaintiff's state court complaint pleads the following causes of action: (i) disability discrimination (Cal. Gov't Code § 12940(a)); (ii) failure to accommodate disability (Cal. Gov't Code § 12940(m)); (iii) failure to engage in the process of determining potential reasonable accommodations (Cal. Gov't Code § 12940(n)); (iv) failure to prevent discrimination (Cal. Gov't Code § 12940(k)); (v) retaliation under the California Family Rights Act (Cal. Gov't Code § 12945.2(l)); and (vi) retaliation under the California Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code § 12940(h)).

Plaintiff's state court complaint does not plead a specific amount of damages. Rather, it prays for economic damages, including "loss of both future and past wages [and] loss of benefits"; non-economic damages, including emotional distress and accompanying physical symptoms; punitive damages; an order requiring defendant to conduct FEHA-related trainings; and attorney fees and costs.

**II.   STANDARD**

State court cases may be removed to federal district court if the federal court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). Federal courts have original "diversity" jurisdiction in cases where the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

1    The party removing a case from state court to federal court
2 bears the burden of proving, by a preponderance of the evidence,
3 that removal is proper. Geographic Expeditions, Inc. v. Estate of
4 Lhotka, 599 F.3d 1102, 1106-7 (9th Cir. 2010). There is a strong
5 presumption against removal jurisdiction; accordingly, the
6 statute is strictly construed against removal. Gaus v. Miles,
7 Inc., 980 F.2d 564, 566 (9th Cir. 1992).
8    In cases "where a plaintiff's state court complaint does not
9 specify a particular amount of damages, the removing defendant
10 bears the burden of establishing, by a preponderance of the
11 evidence, that the amount in controversy exceeds [$75,000]. Under
12 this burden, the defendant must provide evidence establishing
13 that it is 'more likely than not' that the amount in controversy
14 exceeds that amount . . . ." Sanchez v. Monumental Life Ins. Co.,
15 102 F.3d 398, 404 (9th Cir. 1996). The evidence properly
16 considered includes "facts in the removal petition, and . . .
17 summary-judgment-type evidence relevant to the amount in
18 controversy at the time of removal." Abrego Abrego v. Dow Chem.
19 Co. 443 F.3d 676, 690 (9th Cir. 2006) (internal quotations and
20 citation omitted). And "where an underlying statute authorizes an
21 award of attorneys' fees, either with mandatory or discretionary
22 language, such fees may be included in the amount in
23 controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156
24 (9th Cir. 1998). Finally, the district court may make estimates
25 of the amount in controversy. See, e.g., Guglielmino v. McKee
26 Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007) ("The district
27 court applied a preponderance of the evidence standard and
28 determined that, 'conservatively estimated,' *both* named

plaintiffs' allegations met the requisite $75,000 amount-in-controversy threshold.").

**III. ANALYSIS**

The question presented is whether it is more likely than not that the total of plaintiff's damages and any statutory attorney fees, as pled in the state court complaint, exceed $75,000.

One point must be noted at the outset. The allegations in plaintiff's First Amended Complaint (filed on August 19, 2013, after she filed the instant motion) are irrelevant to the jurisdictional inquiry, which may turn only on the allegations pled in her operative state court complaint at the time of removal. See, e.g., Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1065 (9th Cir. 1979) ("Although [a] cause of action, filed in federal court after removal, did state a federal question which would have justified removal had it been alleged in the state court prior to removal, this does not confer removal jurisdiction on the federal court.").

Plaintiff's state court complaint prays for damages "in excess of the minimum jurisdictional limit of this Court" [*i.e.*, the San Joaquin Superior Court]. The complaint was filed as an "unlimited" civil case, that is, one in which the amount demanded exceeds $25,000. See Cal. Civ. Proc. § 85(a). In other words, the court can reasonably infer from plaintiff's pleading that more than $25,000 is at issue in this matter.

At the time of her termination, plaintiff earned $11.98 per hour, and worked an average of 25 to 34 hours per week. (Declaration of Melinda Morgan in Support of Defendant's

Opposition to the Motion to Remand ("Morgan Decl.") ¶ 4, ECF No. 17.) Strictly construing these facts against defendant (the party seeking removal), Gaus, 980 F.2d at 566, the court will assume that any award of lost wages would compensate plaintiff for only 25 hours per week of work, resulting in a weekly wage of $299.50. Lost wages from May 10, 2012, when plaintiff was terminated, until May 10, 2013, when the action was removed to this court, totals some $15,574.00.

When considering motions to remand in cases, such as the present one, involving allegations of unlawful termination, courts commonly look to the value of the wages plaintiffs may have earned after they were terminated. See, e.g., Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (affirming district court's denial of remand based on finding that plaintiff's lost wages after wrongful termination "amounted to at least $55,000"); James v. Childtime Childcare, Inc., No. S-06-2676, 2007 WL 1589543, 2007 U.S. Dist. LEXIS 43753 (E.D. Cal Jun. 1, 2007) (Levi, J.) ("The court evaluates the amount in controversy at the time of removal, but it may consider both past and future lost wages.").

Trial in this matter is set to commence on May 27, 2015, and is estimated to last 10 days. (Scheduling Order, ECF No. 12.) Accordingly, trial would conclude on June 9, 2015 at the earliest, *i.e.*, 108 weeks after this action was removed. If plaintiff prevailed, she would be entitled to another $32,346.00, yielding a total of $47,920.00 in compensation for lost wages.

The question for the court, then, is whether the emotional distress damages, punitive damages, and statutory attorney fees

at issue amount to more than $27,280, *i.e.*, the amount necessary to reach the $75,000 threshold. Case law also suggests that this limit would easily be met. "To establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts." Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (Illston, J.). In support of its opposition, defendant has submitted reports of jury verdicts in two California state court cases, the first from Los Angeles County Superior Court, and the second from San Francisco County Superior Court. In Vasquez v. Del Rio Sanitarium, Inc., No. BC411724, plaintiff alleged that she was terminated due to her pregnancy, and that her employer refused to provide any reasonable accommodation. The jury awarded her $125,000 in noneconomic damages. (Exh. E to Scheffy Decl., ECF No. 17.) The plaintiff in Lopez v. Bimbo Bakeries USA Inc., No. CGC05445104, made similar allegations against her employer. The jury awarded her $122,000 in noneconomic damages and $2 million in punitive damages. (Exh. F to Scheffy Decl.) While it would be unwise to unduly generalize from a sample size of two, these verdicts tend to support federal jurisdiction.

    More persuasive is the fact that, in this day and age, it is virtually inconceivable that a reasonably-compensated attorney could litigate a case for two years and through a ten-day trial for less than $27,280.00 in attorney fees.[2] At $250 per hour, the jurisdictional amount would be reached in less than 110 hours.

---

[2] The relevant statutory attorney fee provision is Cal. Gov't Code § 12965 ("In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including


Plaintiff, in her reply, offers no evidence to counter defendant's evidence as to the potential value of this case. At the hearing on this motion, plaintiff's counsel Nicholas Scardigli was given the opportunity to submit an affidavit from his client averring that she would not seek more than $75,000 herein; counsel declined. The court therefore finds that defendant has shown, by a preponderance of the evidence, that the amount in controversy in this action exceeds $75,000.

**IV.  CONCLUSION**

In light of the foregoing, remand does not appear warranted. Accordingly, the court hereby orders as follows:

[1] Plaintiff's motion to remand is DENIED.

[2] The clerk of the court is DIRECTED to note that this case should henceforth be entitled <u>Tiffany v. Ozark Automotive Distributors, Inc.</u> in the court's CM/ECF system.

IT IS SO ORDERED.

DATED:  September 10, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

expert witness fees.").